UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES WINSHIP,

                            Petitioner,                    **No. 06-CV-6441(VEB)**

    -vs-                                      **DECISION AND ORDER**

JAMES G. BERBARY, Superintendent,

                        Respondent.

_____

## I.      Background

*Pro se* petitioner James Winship ("Winship" or "petitioner") has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. Winship's state custody arises from a judgment entered on September 27, 2004, in New York State County Court, Cattaraugus County, convicting him, upon his plea of guilty, of Driving While Intoxicated (New York State Vehicle and Traffic Law ("V.T.L.") § 1192(3)) and Aggravated Unlicensed Operation of a Motor Vehicle in the Second Degree (V.T.L. § 511(2)(a)).

On June 26, 2003, Winship was arrested for operating a motor vehicle while intoxicated. Winship lacked a valid driver's license at the time because his license had been revoked in connection with a prior driving while intoxicated charge. On April 14, 2004, petitioner pleaded guilty in Cattaraugus County Court (Nenno, J.) to Driving While Intoxicated, a class "D" felony, and Aggravated Unlicensed Operation of a Motor Vehicle in the Second Degree. At the plea allocution, Winship confirmed in open court that he was pleading guilty of his own free will; that he had discussed his case and plea with his attorney; and that he understood that he was giving

up his right to a trial by jury, to call and confront witnesses; to present evidence; and to force the People to prove their case against him beyond a reasonable doubt. Winship clearly waived his right to appeal on any ground except that his sentence had been improper. Transcript of Plea Hearing at 1-5 (hereinafter "P.__"). With regard to his factual allocution, Winship confirmed that on June 26, 2003, he operated a motor vehicle after consuming several alcoholic beverages and taking narcotic pain medication. He also affirmed that he had been convicted of driving while intoxicated in 1994. He admitted that his license had been suspended on the date of his arrest because it had been revoked after a prior driving while intoxicated charge. Winship then formally pleaded guilty to the two charges. P.5-6. Judge Nenno explained to Winship that he would cap his sentence at one to three years provided that Winship appeared for sentencing and was not rearrested between the date of the plea and sentence. Winship told the court that he agreed to this condition. The court adjourned the matter to July 19, 2004 for sentence. P.2-4, 7.

On July 19, 2004, petitioner did not appear for sentencing. Defense counsel informed the court that he did not know where petitioner was.

During this time, Winship apparently had absconded to South Carolina, where he was arrested for assaulting his thirteen-year-old son, thereby violating both of the terms of plea and sentence agreement. Winship was extradited to New York and, on September 27, 2004, he appeared with counsel appeared before Judge Nenno for sentencing. Given Winship's blatant non-compliance with the terms of the plea and sentence agreement, the prosecutor requested that the trial court impose a lengthier sentence than the agreed-upon term of one to three years. The court agreed that the promised term of one to three years was no longer appropriate and noted that the instant case represented petitioner's *ninth* alcohol-related driving incident. Transcript of

September 27, 2004 Sentencing Hearing at 1-5 (hereinafter "S.__"). The court then stated that it was sentencing petitioner to a term of incarceration of two and one-third to *four* years. The prosecutor asked the judge whether he meant to indicate a maximum term of *seven*, and not four, years, and Judge Nenno confirmed that he had been mistaken. Accordingly, Judge Nenno stated that the imposed sentence was two and one-third to *seven* years incarceration. S.6-7.

Winship then moved, through counsel, to set aside the sentence pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.20, in June 2005. Winship argued that the sentence should not have been conditioned on whether he was rearrested or appeared for sentence and requested that the originally promised sentence of one to three years be imposed. *See* Respondent's Exhibit A. The prosecutor opposed the motion. *See* Respondent's Exhibit B.

On July 28, 2005, Judge Nenno denied the motion on the ground that petitioner's rearrest and failure to appear on the sentencing date "removed the condition of the original cap on sentence." *See* Respondent's Exhibit C.

On August 22, 2005, petitioner filed his direct appeal in which he argued that (1) he was not properly informed of the consequences should he be rearrested or fail to appear for sentencing; (2) the court imposed a sentence of two and one-third to four years, not two and one third to seven years; (3) petitioner should have received an opportunity to withdraw his plea; (4) petitioner did not receive effective assistance of counsel. *See* Respondent's Exhibit D. The District Attorney's office filed a brief in opposition. *See* Respondent's Exhibit E.

The Appellate Division, Fourth Department, unanimously affirmed his conviction:

> We reject defendant's contention that County Court erred in imposing an enhanced sentence. During the plea colloquy, defendant replied in the affirmative when the court asked if he understood that he would not receive the agreed-upon sentence

of 1 to 3 years if he did not comply with two conditions, i.e., that he would not be arrested before sentencing and that he would appear at sentencing. Because defendant failed to comply with either of those conditions, the court was not bound by the sentencing promise and properly imposed an enhanced sentence. Contrary to defendant's further contention, the court imposed a sentence of 2 1/3 to 7 years for felony driving while intoxicated, having corrected itself after misstating that the sentence was 2 1/3 to 4 years. Finally, to the extent that the further contention of defendant that he was deprived of effective assistance of counsel survives his plea of guilty, we conclude that his contention lacks merit.

*People v. Winship*, 26 A.D.3d at 768-69 (internal citations omitted). The Appellate Division did not address the issue of whether petitioner had validly waived his right to appeal. The Fourth Department denied his motion to reargue, and the New York State Court of Appeals denied his application for leave to appeal. *People v. Winship*, 26 A.D.3d 768, 809 N.Y.S.2d 722, *rearg. denied*, 28 A.D.3d 1258, 813 N.Y.S.2d 690 (App. Div. 4th Dept.), *lv. denied*, 6 N.Y.3d 899, 817 N.Y.S.2d 634 (N.Y. 2006).

In June 2005, petitioner, acting *pro se*, filed a second motion to set aside his sentence on the grounds that: (1) his waiver of appeal was invalid; (2) he was deprived of the effective assistance of trial counsel; and (3) his sentence was harsh and excessive. See Respondent's Exhibit J. The prosecution opposed the motion. See Respondent's Exhibit K. On November 16, 2005, Judge Nenno denied the motion on the ground that petitioner's rearrest and failure to appear on the sentencing date "removed the condition of the original cap on sentence." See Respondent's Exhibit L. Petitioner sought leave to appeal Judge Nenno's decision to the Appellate Division. See Respondent's Exhibit M. The District Attorney opposed the application. See Respondent's Exhibit N. On April 28, 2006, the Appellate Division denied petitioner's leave application. See Respondent's Exhibit O.

In April 2006, petitioner moved to vacate his conviction and withdraw his guilty plea,

-4-

arguing that (1) his plea was not knowing, voluntary, and intelligent; (2) the plea was invalid

because the court enhanced his sentence; and (3) he did not receive effective assistance of

counsel. See Respondent's Exhibit P. The prosecution opposed the motion. See Respondent

Exhibit Q. On May 12, 2006, Judge Nenno denied the motion in light of the fact that all of

petitioner's arguments raised in the motion had been addressed in petitioner's previous

post-judgment motions and on direct appeal. See Respondent's Exhibit R.

This timely federal habeas petition followed. Winship contends that (1) his plea was

involuntary because he was not properly informed of the consequences of being rearrested or

failing to appear for sentence; (2) the trial court was bound by its initial statement that the

sentence was two and one-third to four years; (3) the trial court erroneously failed to allow

withdrawal of the guilty plea; (4) trial counsel failed to provide constitutionally effective

assistance. (Docket No. 1).

## II.     Standard of Review

The Court's review of habeas petitions filed pursuant to § 2254 is governed by standards set forth

in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132,

110 Stat. 1214. *Brisco v. Ercole*, 565 F.3d 80, 87 (2d Cir. 2009) (citing *Messiah v. Duncan*, 435

F.3d 186, 196-98 (2d Cir.2006)). The Second Circuit has summarized the main points of the

AEDPA inquiry as follows:

> Under AEDPA, a federal court may grant a writ of habeas corpus to a state
> prisoner on a claim that was "adjudicated on the merits" in state court only if it
> concludes that the adjudication of the claim "(1) resulted in a decision that was
> contrary to, or involved an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United States; or (2) resulted in a
> decision that was based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We

must presume the state court's factual findings to be correct and may overturn those findings only if the petitioner offers "clear and convincing evidence" of their incorrectness. 28 U.S.C. § 2254(e)(1).

*Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir.2006) (quoted in *Brisco*, 565 F.3d at 87).

A state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law" or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal rule . . . but unreasonably applies it to the facts" of a particular case, or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by the Supreme Court "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412.

Determinations of factual issues made by a state court must be presumed correct unless the petitioner can show by clear and convincing evidence that such presumption should not apply. *See* 28 U.S.C. § 2254(e)(1); *see also, e.g.*, *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001). The petitioner bears the burden of proving violations of his constitutional rights by a preponderance of the evidence. *See Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997).

## III.     Discussion

### A.     Unconstitutionality of the Guilty Plea

Winship argues that his guilty plea was rendered involuntary and unintelligent because he

did not understand that the sentencing agreement was subject to his subsequent appearance in court for sentencing and his not getting rearrested. See Petition, Ground One (Docket No. 1). He also argues that the court did not impose a maximum sentence of seven years but rather imposed a sentence of four years, which is what the trial court first stated when imposing sentence. Therefore, notwithstanding the trial court's earlier stated intention to sentence Winship to the maximum sentence possible under the statute (i.e., seven years), the court should have been bound to the four-year term. Thus, Winship contends, the seven-year term he received–after the trial court immediately corrected its mistake on the record–is improper. See Petition, Ground Two (Docket No. 1). Finally, Winship claims that the trial court should have allowed him to withdraw his plea at the time that the court realized it had misspoken, and before the court imposed the seven-year sentence. See Petition, Ground Three (Docket No. 1).

The Appellate Division found these claims to be without merit when petitioner raised them on direct appeal. The state court's rejection of these claims was neither contrary to, nor an unreasonable application of, Supreme Court law, as discussed further below.

It is well-settled that the voluntariness of the plea is determined by considering the totality of the circumstances surrounding its entry, including whether it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In evaluating whether a plea was voluntarily made, courts consider (1) whether the defendant had the competent advice of counsel; (2) whether he understood the consequences of plea guilty; and (3) whether the plea resulted from coercion, be it physical or psychological. *See Parke v. Raley*, 506 U.S. 20, 29 (1992)).

The plea colloquy, summarized above in this Decision and Order, demonstrates that Winship clearly understood the consequences of his guilty plea, including the rights which he was relinquishing. The record plainly contradicts his contention that the plea was involuntary because he did not understand or agree that, as a part of the plea agreement, he was required to return to court voluntarily and not be rearrested pending sentence. At the time Winship entered his guilty plea, Judge Nenno asked him whether he understood that the plea agreement was conditioned on his appearance at sentencing and not being rearrested, and petitioner responded, "Yes, sir." P.7.

Likewise unsupported by the record is Winship's contention claim that his maximum sentence should have been set at four, rather than seven, years based upon Judge Nenno's misstatement. Under the New York State Penal Law, the maximum jail sentence that the court could have imposed was seven years. *See* N.Y. PENAL LAW § 70.00(2)(d). I agree with respondent that it is obvious from Judge Nenno's statements at sentencing that he intended to impose the maximum term. Judge Nenno observed that the present conviction was petitioner's "ninth alcohol related driving incident," and that based on petitioner's failure to appear in court and being "on the lamb [sic] in the interim," the originally promised sentence of one to three years was "definitely out the window." The court told petitioner, "You have been to inpatient treatment to no avail. You have a complete disregard for the Court system obviously . . . . So, as far as I am concerned, I have no choice, if I could make [the sentence] more I would." S.5-6.

Thus, the judge's subsequent statement that petitioner's sentence would be two and one-third to four years was, as respondent characterizes it, merely a "slip of the tongue." The prosecutor immediately corrected the court, and Judge Nenno then stated that he was "sorry" that

he had misspoken, and went on to pronounce petitioner's sentence as two and one-third to seven years S.5-6. Clearly, Judge Nenno intended to sentence petitioner to the maximum term and did, in fact, sentence him to seven years. Winship's claim that he should profit by a slight mistake by the court, in spite of his wilful disrespect of the legal system and his flight and commission of crimes while awaiting sentencing, borders on the frivolous.

The final basis alleged for nullifying his guilty plea is that the trial court violated his constitutional rights by failing to grant him an opportunity to withdraw his plea once the court determined that petitioner had violated the plea bargain. As respondent points out, petitioner never requested that the trial court allow him to move to withdraw his plea before sentencing. Furthermore, the trial court was not obligated to suggest this to him *sua sponte*. In any event, habeas relief is not available to him since his constitutional rights could not have been violated by such a lapse had there even been one. *Allen v. McGinnis*, No. 05-CV-2699, 2006 WL 1982871, at *6 (E.D.N.Y. July 13, 2006) (holding that "[a] trial judge in response to a defendant seeking to withdraw a guilty plea is not required to hold an evidentiary hearing, or to grant the withdrawal motion") (citing *Hines v. Miller*, 318 F.3d 157, 161-62 (2d Cir.) (" Both federal and state precedent have established that a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. In light of these precedents, the failure to hold an evidentiary hearing on a motion to withdraw a plea does not offend a deeply rooted or "fundamental" principle of justice.") (citations omitted)), *cert. denied*, 538 U.S. 1040 (2003)).

Even if Winship's guilty plea was made under the misapprehension that he could withdraw it, he has not raised a constitutional claim since "the Constitution . . . does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea,

with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (2002). Furthermore, even if Winship had moved to withdraw his plea, the motion would have been denied: Entitlement to withdrawal of the plea was not available to Winship absent a demonstration that the trial court had failed to inform him that his receiving a less-than-maximum sentence was conditioned upon his appearing in court and not being rearrested in the intervening period; as discussed above, the record belies any such assertions.

**B.       Ineffective Assistance of Trial Counsel**

Winship argues that his trial counsel was ineffective in failing to make timely pretrial motions, secure petitioner's appearance for pretrial hearings, and seek to withdraw petitioner's guilty plea after it became apparent that the trial court would not adhere to the sentence promise of one to three years due to petitioner's wilful breach of the plea agreement.  See Petition, Ground Four (Docket No. 1). As respondent points out, the bulk of petitioner's ineffective assistance claim addresses events that occurred prior to his entry of the guilty plea and, therefore, is not cognizable on habeas review under the doctrine of *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). To the extent that the claim is cognizable, it does not provide a basis for habeas relief because the Appellate Division's rejection of this claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

In *Tollett*, the Supreme Court recognized that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process" and thus "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of

-10-

constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. at 266; *accord*, *e.g.*, *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.), *cert. denied*, 517 U.S. 1147 (1996). "[W]here a defendant has entered a voluntary plea of guilty, the conduct of counsel prior to the entry of the plea is relevant only in determining whether counsel was ineffective in advising the defendant to plead guilty" *Thorpe v. McGinnis*, No. 00 CIV. 5508 (JSM), 2001 WL 417670, at *3 (S.D.N.Y. Apr. 24, 2001). The Court is unconvinced that trial counsel's failure to file timely pre-trial discovery motions and secure his client's appearance at pre-trial hearings bore upon his representation of Winship in regard to his pleading guilty.  These alleged errors by trial counsel thus fall within the non-jurisdictional defects that Winship waived through his voluntary and constitutionally valid guilty plea. *See Tollett*, 411 U.S. at 266.

To the extent that petitioner's ineffective assistance claim is cognizable on habeas review, it does not meet the Supreme Court's standard for demonstrating constitutionally defective representation. In the context of a guilty plea, a petitioner claiming ineffective assistance of counsel must prove that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner's last claim regarding trial counsel's performance at most only tangentially relates to his guilty-plea decision. Rather than claiming that trial counsel gave poor advice to plea guilty, Winship argues that on the day that he appeared for sentence, trial counsel should have predicted that Judge Nenno would find him in breach of the plea agreement and should have preemptively moved to withdraw the plea. As respondent points out, this claim is in obvious

tension with Winship's argument that he had no idea what consequences would result from his

being arrested or failing to appear for sentencing voluntarily. Since petitioner, in effect, hoisted

himself by his own petard,[1] trial counsel had no colorable basis for moving to withdraw the guilty

plea. *See People v. Murphy*, 224 A.D.2d 1023, 637 N.Y.S.2d 903 (4th Dept.), *lv. denied*, 87

N.Y.2d 1022, 644 N.Y.S.2d 156 (1996) (where defendant failed to appear for sentencing and was

arrested on another charge prior to sentencing and the court had advised defendant during the

plea proceeding that it would impose a greater sentence if either event occurred, the court did not

err in imposing an enhanced sentence without permitting defendant to withdraw his plea). Trial

counsel cannot be faulted for declining to make a meritless motion to withdraw the plea. *Cary v.*

*Ricks*, No. 00 CIV. 8926(RWS), 01 CIV. 1181(RWS), 2001 WL 1035141, at *4  (S.D.N.Y. Sept.

7, 2001) ("However, if Cary's inability to pursue the noncustodial treatment option was a result

of his own breach of the plea agreement, then he had no right to withdraw his plea on that basis,

and his ineffective assistance of counsel claim must fail. *See United States v. Merritt*, 988 F.2d

1298, 1313 (2d Cir.) ("a defendant who materially breaches a plea agreement may not claim its

benefits"), *cert. denied*, 508 U.S. 961 (1993) . . . . [A]ny breach of the plea agreement was Cary's

alone, and any motion to withdraw the plea on this basis or the misdemeanor sentence would

have failed. Moreover, it was not unreasonable for Cary's attorney not to seek to withdraw the

guilty plea or to raise the misdemeanor sentence issue when there was no legal or factual basis

for doing so.") (citing *Rahman v. United States*, No. 95 Civ. 9985(SWK), 1996 WL 337287, at

*4 (S.D.N.Y. June 18, 1996) (finding no ineffective assistance of counsel in failing to advise

defendant he could withdraw guilty plea for government's repudiation of plea agreement because

---

[1]        *See* SHAKESPEARE, *Hamlet*, Act 3, scene 4, lines 202–209.

defendant had violated the agreement); other internal citations omitted)).

**IV.    Conclusion**

For the reasons set forth above, petitioner James Winship's request for a writ of habeas corpus is denied and the petition is dismissed. Because Winship has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:          October 6, 2010
                Rochester, New York